UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM MAGALLANEZ, | No. 2:11-cv-3466-GEB-EFB PS |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ENGINEERS AND SCIENTISTS OF CALIFORNIA, LOCAL 20-INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS; and THE PERMANENTE MEDICAL GROUP, INC., | |
| Defendants. | |

This matter was before the court on April 9, 2014, for hearing on defendants Engineers and Scientists of California, Local 20-International Federation of Professional and Technical Engineers (the "Union") and The Permanente Medical Group, Inc.'s ("TPMG") motions for summary judgment. ECF Nos. 57, 64.[1] Attorney Jonathan Siegel appeared on behalf of the Union and attorney David Anderson appeared on behalf of TPMG; plaintiff appeared pro se. The court has carefully considered the parties' pleadings and oral arguments and concludes that, for the reasons explained below, the motions for summary judgment must be granted.

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21). *See* ECF No. 54.

1

This action proceeds on plaintiff's first amended complaint, filed on July 19, 2012. ECF No. 23. The amended complaint asserts a hybrid Section 301(a) claim (i.e., section 301 of the LMRA, 29 U.S.C. § 185(a)) alleging that his employer, TPMG, violated a collective bargaining agreement when it terminated his employment, and that the Union violated its duty to plaintiff of fair representation in handling his grievance over the matter. Plaintiff also asserts common law tort claims of fraud and negligent misrepresentation against the Union. *Id*. at 6-9.[2]

I. <u>Background and Order to Show Cause</u>

On January 17, 2014, the Union filed a motion for summary judgment and noticed the motion for hearing on February 26, 2014. ECF No. 57. On January 21, 2014, TPMG filed its motion for summary judgment, which was also noticed for hearing on February 26, 2014. ECF No. 64. Plaintiff failed to timely oppose the motions. Therefore, on February 20, 2014, plaintiff was ordered to show cause, in writing, by no later than March 12, 2014, why sanctions should not be imposed for his failure to file an opposition or statement of non-opposition. ECF No. 71. The February 20, 2014 order also continued the hearing on defendants' motions for summary judgment to April 9, 2014, and directed plaintiff to file an opposition or statement of non-opposition to the motions by March 26, 2014. *Id*.

On March 7, 2014, plaintiff filed a response to the February 20 order to show cause. ECF No. 72. In his response, plaintiff explains that his failure to timely oppose the motions for summary judgment was due his inexperience and lack of understanding of the procedural process. On March 25, 2014, plaintiff filed oppositions to both motions as required by the February 20 order. ECF Nos. 73, 74. Given plaintiff's pro se status and compliance with the February 20 order, the order to show cause is discharged and no sanctions are imposed.

II. <u>Relevant Facts</u>

In October 2006, plaintiff was hired by TPMG to work as an optometrist. Declaration of David Anderson ("Anderson Decl."), Ex. K ("Magallanez Dep.") 16:2-4. During his employment

---

[2] The complaint also alleged a claim for breach of the duty of fair representation against TPMG. ECF No. 23 at 6. The court dismissed that claim with prejudice on December 6, 2012. ECF No. 36,

2

1    with TPMG, plaintiff was a member of the Union. Magallanez Dep. 18:9-11. Plaintiff's

2    employment relationship with TPMG was governed by a Collective Bargaining Agreement

3    ("CBA") between Kaiser and the Union. Declaration of Lori Landsman ("Landsman Decl.") ¶ 2.

4    The CBA contains a mandatory labor dispute resolution process for any dispute arising from the

5    CBA, which includes arbitration. *Id*. at Ex. A, 26-27. The CBA also provides that TPMG

6    employees can be terminated for just cause. *Id*. at Ex. A, 9.

7          In December 2010, senior staff assistant for Kaiser Permanente Central Valley Area

8    ("CVA") Compliance Department, Lenda Fagundes, informed plaintiff's manager, Lori

9    Landsman, that a system activity report detected that plaintiff had accessed his son's electronic

10   medical records. Landsman Decl. ¶ 7. There appeared to be no business need for accessing these

11   medical records. *Id*. A follow-up investigation revealed that plaintiff had looked at the electronic

12   medical records of his wife and two sons at least 30 times throughout 2010. The records included

13   appointment details, charts, medications prescribed, laboratory tests and results, as well as

14   medical progress notes. *Id*.

15         Plaintiff met with Lori Landsman on December 9, 17, and 27, 2010, to discuss plaintiff's

16   access of his family's medical records. *Id*. ¶ 8. Also present at some or all of these meetings

17   were: CVA Human Resources Consultant Chanelle Ponce, CVA Ophthalmology & Optometry

18   Service Unite Manager Vicki Her, CVA Service Unit Director Grace Yee, CVA Senior Human

19   Resources Consultant Geoffrey Gambel, Union shop steward Alisha Trong, and Union

20   Representative Michael Aiden. *Id*. Ms. Trong and/or Mr. Aiden were present at all of the

21   meetings, representing and advocating on behalf of plaintiff. *Id*.

22         During these meetings, plaintiff recalled signing confidentiality agreements when he

23   started his employment with TPMG and during his subsequent annual reviews. *Id*. ¶ 9. Plaintiff

24   admitted to accessing his wife and two sons' medical records on at least 30 occasions. *Id*. He

25   also confirmed that he was not assigned to provide medical care for his family members, and

26   acknowledged that he was aware of the formal procedure for Kaiser Permanente members to

27   request copies of their medical records through Kaiser Permanente medical-legal secretaries. *Id*.

28   /////

Plaintiff, however, could not explain why he did not utilize the formal procedure for acquiring his family members' medical records. *Id*. Lori Landsman subsequently decided to terminate plaintiff's employment. *Id*. ¶ 10.

Michael Aidan, the Union's Senior Union Representative/Assistant Executive Director represented plaintiff during his grievance process. Declaration of Michael Aidan ¶¶ 3-31. The Union pursued plaintiff's grievance through the first two steps, but ultimately withdrew the grievance without proceeding to arbitration. *Id*. ¶¶ 12-23. Plaintiff subsequently initiated this hybrid § 301 action, alleging that TPMG breached the CBA by terminating his employment and that the Union breached its duty of fair representation by not taking his grievance to arbitration.

III.     Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving

4

party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

IV.   Discussion

As discussed below, plaintiff may only proceed on his claim against the employer that it a violated the collective bargaining agreement if he can first show that the Union, the exclusive bargaining agent, breached its duty of fair representation. *Conkle v. Jeong*, 73 F.3d 909, 916-17

(9th Cir. 1995). Therefore, the court first considers the claim that the Union breached its duty to plaintiff in its representation of him.

### A. Duty of Fair Representation Claim

Section 9(a) of the Labor Management Relations Act ("LMRA") empowers a union to act as the exclusive bargaining agent of all employees in collective bargaining. *See* 29 U.S.C. § 159(a). "The duty of fair representation is a corollary of the union's status as the exclusive representative of all employees in a bargaining unit." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). It is a judicially-created doctrine which requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*. at 177. "Under the doctrine, a union must represent fairly the interest of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements. In particular, a union breaches its duty when its conduct is arbitrary, discriminatory, or in bad faith . . . ." *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) (citations omitted).

Plaintiff argues that the Union breached this duty by failing to pursue his grievance further to the level of arbitration. ECF No. 23 at ¶¶ 26-29. The Supreme Court has made clear, however, that the individual employee does not have "an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca*, 386 U.S. at 191. Rather, the union has considerable discretion and does not breach its duty of fair representation merely because it settled a grievance short of arbitration or concluded that a particular grievance lacked sufficient merit to justify taking it to the level of arbitration. *Id*. at 193-94; *see also Slevira v. Western Sugar Co.*, 200 F.3d 1218, 1221 (9th Cir. 2000) ("[I]n accordance with the broad discretion traditionally owed to unions, we do not scrutinize the quality of the union's decision."); *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1273 (9th Cir. 1983) ( "Because the union must balance many collective and individual interests when it decides whether and to what extent to pursue a particular grievance, courts should accord substantial deference to the union's decisions.").

/////

The undisputed evidence shows that the Union did in fact exercise considerable discretion and carefully weighed important competing interests in determining not to pursue plaintiff's grievance to arbitration. It is undisputed that Michael Aidan, a union representative with more than 20 years of experience, represented plaintiff in his grievance regarding his termination. Magallanez Dep. at 62:8-63:4; Landsman Decl. ¶ 8; Aidan Decl. ¶ 2. It is also undisputed that Mr. Aidan met with plaintiff on December 27, 2010, prior to a meeting with TPMG, to gather information relating to his case. Aidan Decl. ¶ 8. Plaintiff indicated that he believed that he had a responsibility and right to know about the medical care his family was receiving; that he had accessed his family's medical records on several occasions; and that he believed he had authority to view his family's medical information because his wife gave him retroactive authorization to access her and their two sons' medical information. *Id.*; *see also* Pl.'s Opp'n to TPMG's Mot. for Summ. J., ECF No. 74 at 15 (letter from Silvia Magallanez, dated December 21, 2010, giving plaintiff authorization to access her and her sons' medical records effective January 1, 2006).

Mr. Aidan took account of these assertion by plaintiff and investigated into whether plaintiff was being treated differently than other employees. Aidan Decl. ¶ 9. He also advised plaintiff of his options, which included resigning and requesting a severance package or going through the grievance process. *Id.* ¶ 10. Mr. Aidan cautioned plaintiff that his case was "exceptionally difficult given his admitted conduct. . . ." *Id.*

It is undisputed that at the December 27, 2010 meeting, Mr. Aidan argued, on behalf of plaintiff, that TPMG's policies and the training that plaintiff had received concerning confidentiality did not make clear whether an employee could access his own or his family's medical records. *Id.* ¶ 11. TPMG's representative disagreed and stated that plaintiff's conduct would result in termination. *Id.*

On December 29, 2010, Mr. Aidan filed a grievance on behalf of plaintiff. *Id.* at Ex. B. After not receiving a response, Mr. Aidan submitted a letter to Henry Diaz, the Director of Labor Relations, requesting an appeal to the next step. *Id.* at Ex. C. On January 10, 2011, Mr. Aidan received a response to the step-one grievance, which stated that plaintiff's conduct was egregious enough to warrant termination. *Id.* at Ex. D. Between December 27, 2010, and March 9, 2011,

8

1    Mr. Aidan spoke to other unions to determine if there were similar cases where employees had
2    not been terminated. *Id.* ¶ 15. Mr. Aidan learned that there were other situations where TPMG
3    had terminated an employee for engaging in conduct similar to plaintiff's. *Id.* ¶ 17.

4    On February 28, 2011, Mr. Aidan sent another letter to Mr. Diaz, reiterating plaintiff's
5    position that TPMG's policies and training failed to make clear whether employees could access
6    their own family's records. *Id.* at Ex. F. "In light of the clear cause for termination, [his]
7    research and investigation concerning Kaiser's past practice with respect to employees who
8    committed similar infractions, and [his] own review of the trainings that Mr. Magallanez attested
9    to completing and understanding, [Mr. Aidan] believed that convincing an arbitrator that Mr.
10   Magallanez's termination was without just cause would be impossible." *Id.* ¶ 19. Nevertheless,
11   Mr. Aidan requested in-house counsel review the case and provide an opinion. It was legal
12   counsel's "opinion that it would be difficult to prevail in an arbitration contesting 'just cause' for"
13   plaintiff's termination. *Id.* at Ex. G. Mr. Aidan also sought the opinion of the Union's Optometry
14   Unit Board, which opined that success in arbitration was unlikely. *Id.* ¶ 22.

15   On March 15, 2011, plaintiff met with the Labor Relations Consultant for Kaiser's NCAL
16   Regional Office, which constituted Step 2 of plaintiff's grievance. *Id.* ¶ 21. She stated that
17   plaintiff's termination was proper in light of plaintiff's egregious conduct. *Id.* On March 22,
18   2011, Mr. Aidan sent plaintiff a letter informing him that the Union had decided to withdraw
19   plaintiff's grievance based on the belief that arbitration would likely result in the termination
20   being upheld. *Id.* at Ex. I.

21   The evidence submitted by the Union shows that the Union's decision to withdraw
22   plaintiff's grievance was neither arbitrary nor made in bad faith. Rather, the Union, after
23   consulting with legal counsel and other union representatives, concluded that plaintiff was not
24   likely to succeed in arbitration and therefore exercised its discretion to withdraw plaintiff's
25   grievance. Plaintiff has not submitted any evidence to the contrary. The only evidence submitted
26   by plaintiff concerning the Union's handling of his grievance is a transcript of a voicemail Mr.
27   Aidan left plaintiff. ECF No. 73 at 6-8. This transcript, however, does not contradict any of the
28   /////

1  evidence submitted by the Union.  The transcript simply shows that Mr. Aidan called plaintiff to
2  keep him apprised of the status of his grievance.
3      There is no evidence before the court that could permit a reasonable fact finder to
4  conclude that the Union's decision to not pursue arbitration was arbitrary, discriminatory, or in
5  bad faith.  Accordingly, the Union is entitled to summary judgment on this claim.

### B. Breach of the Collective Bargaining Agreement

7      Plaintiff's second claim alleges that defendant TPMG breached the CBA.  Section 301(a)
8  of the LMRA grants district court's original jurisdiction over actions alleging violations of a
9  collective bargaining agreement.  29 U.S.C. § 185(a).  "[I]n order to proceed with a § 301 suit
10 against the employer, the employee must show not only that her discharge was contrary to the
11 agreement, but also must demonstrate that the union breached its duty of fair representation."
12 *Conkle v. Jeong*, 73 F.3d at 916-17.  As just explained, the Union did not breach its duty of fair
13 representation.  Therefore, plaintiff cannot proceed with his § 301 claim for breach of the CBA
14 against TPMG.  *See id*.  Accordingly, TPMG is entitled to summary judgment on this claim.

### C. Fraud and Negligent Misrepresentation

16     Although the third cause of action is titled "Fraud and Negligent Misrepresentation," this
17 cause of action consists of two separate claims, one for fraud and the other for negligent
18 misrepresentation.  ECF No. 23 ¶¶ 37-40.  Both are predicated on the assertion that the Union
19 falsely promised to represent plaintiff.  Plaintiff argues that the Union made the representation
20 that it would participate in the grievance process through arbitration.  *Id*. ¶ 38.  Plaintiff alleges
21 that the Union knew the representation was false and that the Union had no intention of taking
22 plaintiff's grievance to arbitration.  *Id*. ¶ 29.  The Union argues, correctly, that the claims are
23 preempted by the LMRA.[3]
24     The LMRA preempts state-law causes of action that are "substantially dependent upon
25 analysis of the terms of an agreement made between the parties in a labor contract[.]"  *Allis-*

---

[3] The Union also argues that plaintiff has failed to provide sufficient evidence to establish his claims for fraud and negligent misrepresentation.  ECF No. 58 at 21.  Because the claims are preempted, the court need not reach that argument.

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). The U.S. Court of Appeals for the Ninth Circuit has held that state law claims that implicate the duty of fair representation are also preempted. In *Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008), the Ninth Circuit held that:

> [t]he federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative . . . . To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship. Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining representative, such as an express provision of the collective bargaining agreement or a collateral contract."

*Id*. 539-540.

The crux of plaintiff's claim is that the Union fraudulently or negligently misrepresented that it would take plaintiff's grievance to arbitration, which it failed to do. Any obligation to take plaintiff's grievance to arbitration is grounded in the Union's special status as a representative for plaintiff. Thus, plaintiff's claims for fraud and negligent misrepresentation directly implicate the Union's duty of fair representation, and are therefore preempted by the LMRA. *See Chamernick v. United Steelworkers of America, Local 2660*, 2009 WL 1209467, at * 6 (D. Minn. May 1, 2009) (finding that "the duty of fair representation extends to the alleged misrepresentations" and therefore plaintiff's claim for fraud was preempted); *Cf. Adkins v. Mireles*, 526 F.3d at (finding that state law negligent misrepresentation claim was preempted because it implicated the federal statutory duty of fair representation under the LMRA). Accordingly, the Union is entitled to summary judgment on this cause of action.

V. <u>Conclusion</u>

Accordingly, it is hereby ORDERED that February 20, 2014 order to show cause, ECF No. 71, is discharged.

Further, it is RECOMMENDED that:

1. The Union's motion for summary judgment, ECF No. 57, be granted;

2. TPMG's motion for summary judgment, ECF No. 64, be granted; and

/////

3. The Clerk be directed to enter judgment in favor of the Union and TPMG and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 2, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE